UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OHIO DEPARTMENT OF INSURANCE,<br><br>                                        Plaintiff,<br><br>            -v-<br><br>RPM MORTGAGE, INC. and LENDUS, L.L.C.,<br><br>                                        Defendants. | 20 Misc. 590 (PAE)<br><br><u>OPINION &<br>ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

On November 30, 2020, this matter was transferred to this Court because it relates to

discovery in *Partner Reinsurance Co. v. RPM Mortgage, Inc.* ("*PartnerRe*"), No. 18 Civ. 5831

(PAE) (S.D.N.Y.). *See* Dkts. 4 ("Transfer Order"), 5. That case arises from a dispute over a

failed merger agreement between defendant buyers RPM Mortgage, Inc. ("RPM") and LendUS,

LLC ("LendUS," and together with RPM, "RPM") and Entitle Direct Group, Inc. ("Entitle"), an

Ohio-based title-insurance company. There, Entitle's stockholder representative, Partner

Reinsurance Co. Ltd. ("PartnerRe"), alleges that RPM breached their merger agreement by

failing to consummate the deal. RPM denies those allegations and has asserted counterclaims

blaming Entitle and PartnerRe for the transaction's failure.

One condition for closing that merger was obtaining regulatory approval of the

transaction from plaintiff the Ohio Department of Insurance ("ODI"). Over the course of the

*PartnerRe* parties' negotiation and execution of the merger agreement, they worked together to

assemble the financial information required and to submit the application for approval (the

"Form A" application) to the ODI in March 2017. However, RPM and LendUS later came to

believe that Entitle had failed to provide material information about its financial condition to the

ODI, and sought Entitle's consent to supplement the Form A with additional information.  They contend that PartnerRe refused, and that PartnerRe or Entitle may have engaged in *ex parte* communications with the ODI that they argue the merger agreement forbade.  On June 2, 2017, the ODI approved the application.

Before the Court now is the ODI's motion to quash a subpoena issued to it by RPM in connection with discovery in *PartnerRe*.  That subpoena seeks a deposition of a representative of the ODI under Federal Rule of Civil Procedure 30(b)(6) and the production of documents related to the ODI's consideration of the Entitle-RPM merger.  Dkt. 1-1 ("Subpoena").  ODI has, to date, produced more than 2,000 pages of documents in response.  Dkt. 1 ("ODI Mem.") at 4.  It argues that such production exhausts the materials in its possession that are not subject to Ohio statutory privileges.  *Id.* at 5.  It further contends that the deposition RPM seeks would be unduly burdensome, and potentially explore privileged materials or communications.  *Id.* at 9.  RPM disagrees, arguing that the cited privileges are inapplicable to the materials requested and that the deposition sought will impose no undue burden on the ODI.  Dkt. 2 ("RPM Mem.").

For the reasons that follow, the Court denies the ODI's motion to quash and orders the subpoena enforced.

## I.     Applicable Legal Standards

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The Federal Rules of Civil Procedure direct the Court to quash or modify subpoenas only in limited circumstances, such as where the subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(iii), (iv).  To survive a motion to quash, "the party issuing the subpoena must demonstrate that the information sought is relevant and material

to the allegations and claims at issue in the proceedings." *Alex & Ani, Inc. v. MOA Int'l Corp.*, No. 10 Civ. 4590 (KMW), 2011 WL 6413612, at *3 (S.D.N.Y. Dec. 21, 2011) (citation omitted). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)).

Once the issuing party demonstrates relevance, "[t]he movant bears the burden of persuasion in a motion to quash a non-party subpoena." *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018); *see Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160 (PAE), 2019 WL 2521300, at *6 (S.D.N.Y. June 19, 2019); *see also, e.g.*, *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (citation omitted). The trial court has broad discretion to determine whether a subpoena imposes an undue burden. *See Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003).

The standard applicable to depositions is similar to the standard for document subpoenas: The Court may authorize additional depositions unless "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," "the party seeking discovery has had ample opportunity to obtain the information," or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b), (d); *see Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, No. 13 Civ. 7204 (PAE), 2014 WL 12939056, at *1 (S.D.N.Y. Dec. 1, 2014).

II.     **Discussion**

A.      **Relevance**

Here, the materials sought by RPM are relevant, and the ODI has not argued otherwise. *See* ODI Mem.  The ODI's approval of the Entitle-RPM merger was a condition of the deal's closing, and the merger agreement contained a host of provisions regarding the parties' submissions to and communications with the ODI.  *See, e.g.*, *PartnerRe*, No. 18 Civ. 5831, Dkt. 34-3 ("Merger Agreement") §§ 3.6(a) (regarding Entitle's financial statements submitted to the ODI), 5.4(a) (requiring efforts to prepare ODI Form A and other submissions to ODI), 5.4(b) (requiring parties to keep each other "promptly informed of material communications relating to the receipt of" approval by the ODI), 8.1(c) (requiring ODI's approval as a condition of closing). RPM argues that Entitle and PartnerRe may have breached some or all of those terms, including by submitting misleading information to the ODI or withholding pertinent information from it. *See* RPM Mem. at 8–9.  Regardless of the merits of those claims and defenses, they appear central to RPM's theory of liability in *PartnerRe*.  *See, e.g.*, *PartnerRe*, No. 18 Civ. 5831 (PAE), Dkt. 128 ("Answer to Amended Complaint") ¶¶ 8, 18, 25, 37–38.  Accordingly, the Court will not quash the subpoena on the basis that it is irrelevant.

B.      **Privilege**

The ODI focuses mostly on the application of Ohio statutory privileges to resist RPM's subpoena.  Specifically, it asserts that all remaining documents or information are protected both under (1) the "work product" privilege established in Ohio Rev. Code. Ann. § 3901.48(B), (C); and (2) the deliberative-process privilege.  *See* ODI Mem. at 5–9.  The first clearly does not apply to many of the documents and information at issue here.  The second likely does not apply either, and, in any event, the ODI has not carried its burden of persuasion as to it.

First, as RPM correctly notes, Ohio protections for the ODI's "work product" apply only to specific functions of the ODI.  Section 3901.48(B) protects from disclosure "work papers"[1] of the ODI "resulting from the conduct of an examination made pursuant to section 3901.07 of the Revised Code or from the conduct of a financial analysis of any entity subject to examination by the superintendent."  Similarly, section 3901.48(C) protects such papers "resulting from the conduct of a performance regulation examination made pursuant to authority granted under section 3901.011 of the Revised Code or from the conduct of a market analysis or investigation of any entity subject to examination by the superintendent."  But the ODI's analysis of the Entitle-RPM merger did not result or arise from an examination under sections 3901.07 or 3901.011 of the Ohio Revised Code.  Rather, the ODI's review of mergers and acquisitions of insurance companies arises from its authority in section 3901.321, which does not contain a confidentiality provision and is not referred to in section 3901.48(B) or (C).  *See State ex rel. The Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E.2d 661, 670 (Ohio 1997) ("[T]he [ODI] is bound to follow the legislative mandate of treating documents submitted pursuant to R.C. 3901.321 as public, and keeping confidential those documents submitted due to an R.C. 3901.07 examination.").

---

[1] Ohio Admin. Code § 3901-3-08(C) defines work papers as follows:

> the records kept by the superintendent of the procedures followed, the tests performed, the information obtained, and the conclusions reached pertinent to his or her examination and surveillance of the financial affairs of an insurer.  Work papers may include audit planning documentation, work programs, analyses, memoranda, notes, letters of confirmation and representation, copies of work papers of certified public accountants, abstracts or copies of company documents and schedules of commentaries prepared or obtained by the superintendent in the course of his or her examination and surveillance of the financial affairs of an insurer.

Accordingly, to the extent that any of the documents requested by RPM were submitted pursuant to section 3901.321 rather than sections 3901.07 or 3901.011, they are public under Ohio law.  In the event that any such documents may be pertinent to the ODI's work under more than one of these provisions, the Ohio Supreme Court has held that "the original purpose for collecting the document controls."  *See The Plain Dealer*, 687 N.E.2d at 669.  Thus, to the extent that RPM's subpoena seeks disclosure of a work paper that was originally collected pursuant to the ODI's authority under section 3901.07 or 3901.011, such a document may properly be withheld.  However, that is not a basis to quash the subpoena.  It is instead a basis to withhold a specific document, with this basis identified on a document-by-document privilege log furnished by the ODI to RPM.

Second, the ODI argues that the deliberative-process privilege applies to some or all of the testimony that RPM seeks to elicit in its deposition of an ODI representative.  *See* ODI Mem. at 8–9.  As an initial matter, it does not appear that any such privilege applies in this context. Most of the cases the ODI cites apply a specific exemption identified in the Federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5) ("Exemption 5").  *See, e.g.*, *Kent Corp. v. NLRB*, 530 F.2d 612, 618 (5th Cir. 1976).  And at least one Ohio court has expressly rejected the application of such a privilege under the state's public-records law.  *See State ex rel. Dist. 1199, Health Care & Soc. Serv. Union, SEIU v. Gulyassy*, 669 N.E.2d 487, 492 (Ohio Ct. App. 1995) ("For the foregoing reasons, we decline respondents' invitation to create an Exemption 5-type privilege to R.C. 149.43.").[2]  The lack of legal support for the existence of this privilege alone warrants the denial of the ODI's motion to quash on this ground.

---

[2] The two Ohio decisions on which the ODI relies are inapposite.  Each addressed appeals of administrative decisions, recognizing only that reviewing courts are limited to the record before

Even assuming that the deliberative-process privilege applied, the ODI has failed to carry its burden of showing that it requires the Court to quash the subpoena here. *Hughes*, 327 F.R.D. at 57. It does not identify the deposition topics that would fall within its protection, asserting only that "testimony from a Department representative on the above-listed topics as outlined by RPM would be protected from disclosure pursuant to the deliberative process privilege." ODI Mem. at 9. In fact, the deposition topics identified by RPM, and objected to by the ODI, appear not to intrude upon such deliberations. *See* ODI Mem. at 6 (RPM seeks testimony on "policies and procedures implemented" by ODI in connection with Form A filings in general and the Entitle-RPM transaction in general, as well as information about which communications took place in connection therewith). Accordingly, the deliberative-process privilege, even if it applied, would not provide a basis for quashing the subpoena.

### C.     Undue Burden

Last, the ODI briefly argues that the deposition called for by the subpoena would impose an undue burden on it and the representative chosen for such a proceeding. *See* ODI Mem. at 9. But its submission on this point is largely conclusory. *See Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*, 180 F. Supp. 3d 290, 293 (S.D.N.Y. 2016) (rejecting undue-burden argument as "entirely conclusory"); *id.* ("Certainly the obligation for sitting for a deposition is not, in and of itself, burdensome."); *see also Taylor Precision Prods., Inc. v. Larimer Grp. Inc.*, 15 Civ. 4428 (ALC) (KNF), 2017 WL 10221320, at *5 (S.D.N.Y. Feb. 27, 2017) (rejecting challenge to subpoena where challenger "failed to demonstrate with any specificity that" it was unduly

---

the agency in such situations. *See Talbut v. Perrysburg*, 594 N.E.2d 1046, 1049 (Ohio Ct. App. 1991) (review of "quasi-judicial proceeding" limited by statute to transcript of proceedings before the agency unless enumerated exception applies); *T. Marzetti Co. v. Doyle*, 523 N.E.2d 347, 350 (Ohio Ct. App. 1987) ("The trial court was required to judicially review the decision of the Ohio Civil Rights Commission upon the record before it.").

burdensome).  And to the extent that the ODI cites the remote work occasioned by the

COVID-19 pandemic as a special burden relevant here, the Court does not view that fact as

supporting quashing the subpoena.  As RPM notes, the deposition likely will be conducted

remotely as well, obviating the need for travel that might otherwise be required.  *See* RPM Mem.

at 11.  Depositions in civil cases since March have overwhelmingly been conducted remotely—

and successfully and efficiently.  The ODI does not identify anything especially burdensome

about the deposition contemplated here or why it is entitled to special solicitude.  Accordingly,

the ODI has not met its burden of demonstrating that the deposition of one of its

representatives—which the Court understands from RPM's representations to last no more than

"a few hours on a single day," *id.*—would impose an undue burden on it.  The Court therefore

declines to quash the subpoena.

## CONCLUSION

For the foregoing reasons, the Court denies the ODI's motion to quash and orders the

ODI to comply with the subpoena.  The Court reminds counsel that, in accord with the

scheduling order in place in *PartnerRe*, all discovery, including the deposition contemplated by

the subpoena, is to be completed by December 17, 2020.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: December 2, 2020
       New York, New York